WALTER J. ROTHSCHILD, Judge.
|¡>The natural mother, E.M., and the natural father, R.L., appeal a judgment of the juvenile court terminating their parental rights to their three daughters, T.P.M., T.T.M., and T.C.M. For the reasons which follow, we affirm.
T.P.M. was born on January 8, 2002. T.T.M. and T.C.M., who are twins, were born on March 25, 2003. According to the State of Louisiana, Department of Social Services, Office of Community Services, (“the State”), the twins were admitted to Children’s Hospital on April 28, 2003 for malnutrition, severe dehydration and respiratory distress. After a protective order was obtained for the twins, R.L. allowed the oldest daughter, T.P.M., to go with the mother, E.M., after allegedly being informed that he was not to leave her with the mother. On May 20, 2003, T.P.M. was observed to have three large bumps on her head, and the parents could not explain what happened to her. The children were found to be “in need of |scare” and, by court order dated June 17, 2003, all three children were placed in the State’s custody. The children have been in foster care since that time.
*753 The goal for this family was originally reunification and a case plan was ordered for the parents. However, on October 26, 2004, the State filed a Petition for Termination of Parental Rights on the grounds of abandonment and/or failure to substantially comply with the court-approved case plan. Trial began on March 22, 2005, at which both parents and Dr. Amy Abraham of the Tulane Infant Team testified. Trial reconvened on April 26, 2005 at which time the parties and the Court reviewed videotapes of the parents and the children that were taped by the Tulane Infant Team. On January 27, 2006, when the case came before the trial court again, all parties rested and the Court took the matter under advisement. On April 7, 2006, the trial judge issued a judgment decreeing that the parental rights of E.M. and R.L. relative to T.P.M., T.T.M., and T.C.M. are irrevocably terminated and dissolved, and that the children are free and eligible for adoption. It is from this judgment that E.M. and R.L. appeal.

DISCUSSION

The primary concern of the courts and the State in proceedings for involuntary termination of parental rights is to determine and insure the best interest of the child. State ex rel. A.T., 06-0501 (La.7/6/06), 936 So.2d 79, 82. In order to terminate a person’s parental rights, a court must find that the State has established at least one of the statutory grounds for termination set forth in LSA-Ch.C. art. 1015 by clear and convincing evidence. LSA-Ch.C. art. 1035; Id.
In the present case, the State filed a Petition for Termination of Parental Rights based on the grounds set forth in LSA-Ch.C. art. 1015(4)(b) and (5). Although only one ground must be proven, the trial court found that the State met its burden of proving both grounds by clear and convincing evidence.
|4On appeal, E.M. and R.L. argue that the trial court erred in finding that the State met its burden of proof that each parent abandoned the children, pursuant to LSA-Ch.C. art. 1015(4)(b). The ground for termination of parental rights under LSA-Ch.C. art. 1015(4)(b) is:
(4) Abandonment of the child by placing him in the physical custody of a nonpar-ent, or the department, or by otherwise leaving him under circumstances demonstrating an intent to permanently avoid parental responsibility by ...:
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
R.L. asserts that his children were taken from him, so he did not “place them in the custody of a nonparent or the department.” However, the statute requires that the parent place the child in the custody of a nonparent or the department or leave the child in circumstances demonstrating an intent to permanently avoid parental responsibility. Failure to significantly contribute to the child’s care for six consecutive months is one of the methods by which a parent can demonstrate an intent to permanently avoid parental responsibility, pursuant to LSA-Ch.C. art. 1015(4)(b).
R.L. further contends that he never intended to avoid his parental responsibility to his children and that he did provide support for the children when he brought toys, snacks, candy, or gifts during his visits with them at the Infant Team Office. E.M. also contends that she assisted in supporting the children by bringing gifts or snacks to their visits. Both parents claim that they should not be penalized for failing to pay child support to the State because the State never assessed their *754 child support obligations, as required by the case plan.
In her reasons for judgment, the trial judge found that neither parent made any significant contribution to the children’s support from June 2003, when the children were ordered into State custody, through October 2004, when the State |Rfiled the Petition for Termination of Parental Rights. She stated that she considered the gifts and snacks the parents sometimes brought to their visits, as well as the fact that the amount of child support was not set. However, she stated that “the statute only requires proof of a lack of significant contributions to the support of the children by a parent for any six-month period to justify termination of that parent’s rights.”
In State ex rel. M.L., 00-153 (La.App. 3 Cir. 5/3/00), 761 So.2d 103, the mother made only one monthly contribution to her children’s support and brought birthday cakes to the children. Based on these contributions, the Third Circuit affirmed the trial court’s finding that the State proved by clear and convincing evidence that the mother did not provide for the care and support of her children for at least six months.
See also, State in Interest of D.M.H. v. 27,807 (La.App. 2 Cir. 9/27/95), 661 So.2d 643, in which the natural parents made some limited payments to the State while their child was in foster care and the mother brought the child a few gifts, one article of clothing, and some fast food meals. The Second Circuit found that the gifts, food, and other items brought to the child were not sufficient as “reasonably necessary food and clothing” to constitute support.
At trial, R.L. admitted that he worked several jobs during the time his children were in foster care, but he did not pay any child support to the State, because “nobody never sent me a paper to my house” and “nobody never told me where to go at.” He further acknowledged that he was in court when child support was ordered as part of the case plan. He stated that he gave his income information, i.e. pay stubs, to the Infant Team, but not to the State.
E.M. testified that she gets $386 per month from social security disability. She admitted that she was supposed to bring a social security letter or mail it to |fishow how much she receives every month in order to determine child support, but she claims that she never had time to mail the letter.
Considering the jurisprudence, along with the testimony of E.M. and R.L., we agree with the trial judge that the State met its burden of proving that neither E.M. nor R.L. made significant contributions to the care and support of their children for at least six consecutive months. The children have been in foster care for over three years. We cannot reasonably conclude that occasional snacks or gifts constitute “significant contributions” to their care and support. Based on the evidence before us, we find no error in the trial court’s finding that the elements of LSA-Ch.C. art. 1015(4)(b) have been met as to each parent by clear and convincing evidence.
Although only one ground for termination of parental rights must be satisfied, the trial court found a second ground for termination under LSA-Ch.C. art. 1015(5) was also established by clear and convincing evidence. We agree.
The ground for termination set forth in LSA-Ch.C. art. 1015(5) is:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has *755 been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
Reformation sufficient to prevent termination of parental rights requires that the parent demonstrate substantial change, such as significantly altering or modifying the behavior that resulted in the State’s removal of the child from the parent’s home. State in Interest of H.D., 98-0953 (La.App. 4 Cir. 11/4/98), 721 So.2d 1045, 1048; State in Interest of B.J., 95-1915 (La.App. 1 Cir. 4/4/96), 672 So.2d 342, 347, writ denied, 96-1036 (La.5/31/96), 674 So.2d 264. A reasonable | expectation of reformation or significant improvement in the near future exists if the parent has cooperated with State officials and has shown improvement, although all of the problems have not been eliminated. State in Interest of S.M., 98-0922 (La.10/20/98), 719 So.2d 445, 450; State in Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309, 1317 (La.1993).
The trial judge, found that both E.M. and R.L. failed to complete their court-approved case plan and that there is no reasonable expectation of improvement in either parent’s conduct in the near future. E.M. and R.L. both contend that the trial court erred in this finding. R.L. asserts that he substantially complied with his case plan and that it is impossible to determine if there is a reasonable expectation of improvement in his ability to parent his children without more time and attention given to provide him with effective services. He contends that the intervention of the Tulane Infant Team was inadequate and that they did not provide sufficient parenting instruction. E.M. contends that if she did not rehabilitate after a year of instruction with the Infant Team, it was because she did not receive proper instruction from them. She argues that she cooperated with the Infant Team, but they, did not address her parental problems.
In her reasons for judgment, the trial judge agreed that each parent cooperated with parts of their case plans, but she found that neither of them made the improvements necessary for the safe return of the children and there is no reasonable expectation that their conduct will change in the near future. The trial judge indicated that she based her decision on the evidence provided by the State and the parents’ own admissions, noting that both parents continue to depend on others. The.trial judge further indicated that even if she agreed with the parents’ argument that the Tulane Infant Team’s efforts to assist them with their parenting | ^skills were inadequate, she found that the Infant Team’s evaluations of the parents were adequate. She summarized the evaluation of the Infant Team as follows:
The Infant Team reports state that the parents are- not able to be safe and effective caregivers at this time nor in the foreseeable future. Even with continued intensive intervention, the parents remain unable to make the necessary progress toward being reunited with the children. The Infant Team reported that the children remain at high risk for maltreatment if returned to their biological parents now, or in the future. The Infant Team stated in the report that [E.M.] cannot provide for the safety of her children in a small, baby-proofed room with another adult present. On multiple occasions she failed to notice when her children were in dangerous situations, such as trying *756 to touch electrical sockets or choking, and did not intervene even after it was called to her attention. The reports state that [R.L.] is also not capable of taking care of the children in the small room with another adult present. They also note that he has not been able to obtain stable, independent housing or consistent employment to provide for the needs of his growing family. He also has no specific plan as to how he will do this in the near future. The Infant Team reports show that these parents are not capable of caring for these three young children.
At trial, Dr. Amy Abraham of the Tulane Infant Team testified that E.M. has made minimal progress in being able to safely parent her children. She stated that E.M. had good attendance at the visits and therapy, but she did not have good participation and was disengaged during the sessions. She opined that E.M. could not properly attend to her three daughters, even with a professional assisting her. She testified that R.L. missed many sessions, but he did not provide her with documentation that these absences were due to work, as requested. Dr. Abraham indicated that R.L. often seemed angry, irritable, and uncooperative in therapy. She further stated that she did not see improvement in his ability to safely supervise the children.
In State ex rel. J.M., 02-2089 (La.1/28/03), 837 So.2d 1247, the Louisiana Supreme Court considered a termination of parental rights case in which the mother worked very hard at complying with her case plan, but due to her “intellectual handicap” or “subaverage intelligence,” she continued to have [ 3difficulty maintaining basic standards for her children. Although the Court stated that she had a positive bond with her children and the children loved her, it found that the mother was simply incapable of managing the care of her children. Accordingly, the mother’s parental rights were terminated. The Court stated:
We recognize that a bond exists between the children and their mother.We also acknowledge that S.M. desires a continued relationship with her children. However, we cannot ignore the fact that S.M. has demonstrated an inability to care for all of her children. It is paramount that we place the children’s best interests above that of their mother’s [sic]. Children have the right to live in a safe, secure environment and to be reared by someone who is capable of caring for them. Despite her efforts, it is clear that S.M. is incapable of meeting the needs of all six of her children.
In the present case, despite the fact that both parents assert that they want a continued relationship with their children, they have not demonstrated that they have the ability to safely and consistently care for them. After thorough review and consideration of the record before us, as well as the applicable jurisprudence, we agree with the trial judge that E.M. and R.L. did not substantially comply with their case plans and there is no reasonable expectation of significant improvement in the near future. Accordingly, the trial judge did not err in finding that the State proved the ground for termination of parental rights set forth in LSA-Ch.C. art. 1015(5) by clear and convincing evidence.
In addition to establishing a statutory ground for termination, the trial judge must also find that termination is in the best interest of the child. State ex rel. S.M.W., 00-3277 (La.2/21/01), 781 So.2d 1223, 1233. E.M. and R.L. assert that it is not in the best interest of the children to terminate their parental rights. We disagree.
*757 The children were extremely young when taken into State custody. They have remained in foster care since that time, over three years. The record reflects that E.M. and R.L. have made little progress and that there is no reasonable 1 ^expectation that they will significantly improve in the near future. The father, at age 21, has eight young children. He has shown unreliable behavior with the three children at issue here and has failed to maintain a stable home or to demonstrate that he can safely and consistently care for them. There is no evidence that this is likely to change. E.M. has had another child since these children were taken into custody and she has also failed to show that she can maintain a stable home or safely and consistently care for the children at issue in this case.
A child has an interest in the termination of rights that prevent adoption and inhibit the child’s establishment of secure, stable, and continuous family relationships. State in Interest of J.M., 30,302 (La.App. 2 Cir. 10/29/97), 702 So.2d 45, 50, writ denied, 97-2924 (La.2/6/98), 709 So.2d 736. In the present case, we agree with the trial judge that it is the children’s best interest that E.M. and R.L.’s parental rights relative to T.P.M., T.T.M., and T.C.M. be irrevocably terminated, and that these children are free to be adopted.

DECREE

For the reasons set forth above, we affirm the April 7, 2006 judgment of the trial court, irrevocably terminating and dissolving E.M. and R.L.’s parental rights relative to T.P.M., T.T.M., and T.C.M.

AFFIRMED.