STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2024 CJ 0640

STATE OF LOUISIANA IN THE INTEREST OF
R.O. AND E.J.

**Judgment Rendered:** DEC 3 0 2024

* * * * * *

On appeal from the
Bogalusa City Court
In and for the Parish of Washington
State of Louisiana
Docket Number J2022164

Honorable David M. Duke, Judge Presiding

* * * * * *

| | |
|---|---|
| Kimberly Debrock<br>Covington, LA | Counsel for Appellee<br>Department of Children and Family<br>Services |
| Rebecca Henderson<br>Mandeville, LA | Counsel for Appellees<br>R.O. and E.J. |
| Victor Papai<br>Franklinton, LA | Counsel for Appellant<br>C.B. |

* * * * * *

BEFORE: GUIDRY, C.J., PENZATO, AND STROMBERG, JJ.

**GUIDRY, C.J.**

The mother of two minor children appeals from a trial court judgment, which terminated her parental rights and freed her children for adoption. For the reasons that follow, we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

On or about September 30, 2022 and October 11, 2022, the biological children of C.B., R.O. (born on June 10, 2021) and E.J. (born on October 9, 2022), were removed from their mother's care and placed in the custody of the State of Louisiana through the Department of Children and Family Services (DCFS/"the State"). DCFS had received a report that a minor child was living with his mother in an unsafe environment. When DCFS arrived to the home to investigate, the worker observed big holes in the floor and trash and filth scattered throughout. The mother, C.B., admitted that she had been staying in the home for several weeks and using methamphetamines. C.B. also admitted that she was eight months pregnant.[2]

On November 15, 2022, the State filed a petition to have the children declared in need of care, and the children were later adjudicated as such.[3] A case plan with the goal of reunification was initially approved by the court. However, on August 9, 2023, the goal of the case plan was changed from reunification to adoption.

Thereafter, on September 19, 2023, DCFS filed its petition to terminate the parental rights of C.B. A trial was held on October 24, 2023, after which the trial court found it in the best interest of the children to terminate C.B.'s parental rights pursuant to La. Ch.C. art. 1015.[4] C.B. now appeals.

---

[1] The same judgment terminated the fathers' parental rights. The fathers have not appealed.

[2] C.B. was pregnant with E.J. at the time.

[3] C.B. denied the allegations of the petition.

[4] On October 26, 2023, a judgment was signed terminating the parental rights of C.B. and freeing the children for adoption. C.B. filed a motion for new trial, which was denied.

2

# DISCUSSION

Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. In order to terminate parental rights, the petitioner must prove each element of a ground for termination by clear and convincing evidence. See La. Ch.C. art. 1035(A). Pursuant to La. Ch.C. art. 1037(B)(1):

> When the court finds that the alleged grounds set out in any Paragraph of Article 1015 or 1015.1 are proven by the evidentiary standards required by Article 1035 and that it is in the best interest of the child, it shall order the termination of the parental rights of the parent against whom the allegations are proven. The court shall enter written findings on both issues. The consideration of the best interest of the child shall include consideration of the child's attachment to his current caretakers.

Whether termination of parental rights is warranted is a question of fact, and a trial court's determinations will not be set aside in the absence of manifest error. State ex rel. H.A.B., 10-1111, p. 31 (La. 10/19/10), 49 So. 3d 345, 368.

The grounds for termination of parental rights, as applicable to this matter, are found in La. Ch.C. arts. 1015(5)(b) and (6).[5]  Article 1015(6) provides for termination when:

> *Unless sooner permitted by the court, at least one year has elapsed since a child was removed* from the parent's custody pursuant to a court order; *there has been no substantial parental compliance with a case plan* for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; *and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future,* considering the child's age and his need for a safe, stable, and permanent home.

(Emphasis added.) Under this Article, lack of parental compliance with a case plan may be evidenced by any of the following: the parent's failure to attend court-approved scheduled visitations with the child; the parent's failure to contribute to the costs of the child's foster care; and/or the parent's lack of substantial improvement in redressing the problems preventing reunification. See La. Ch.C. art.

---

[5] After amendment by 2023 La. Acts No. 271, § 1 (eff. June 9, 2023), these grounds are now set forth in La. Ch.C. arts. 1015(5) and (4)(b), respectively; the substance of these sections, however, has not changed.

3

1036(C). In addition, lack of any reasonable expectation of significant improvement in the parent's conduct may be evidenced by any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior. See La. Ch.C. art. 1036(D).

Article 1015(5)(b) provides that a parent's rights may be terminated on the basis of abandonment.[6] Proof of abandonment does not require the child to be voluntarily left. Abandonment may be proven by establishing that the parent left the child under circumstances demonstrating an intention to permanently avoid parental responsibility by failing to provide significant contributions to the child's care and support for any consecutive six-month period. See State ex rel. A.T.W., 09-2274 (La. App. 1st Cir. 3/26/10), 2010 WL 1170262, *2.

In the present case, we find no manifest error in the trial court's conclusion that DCFS proved by clear and convincing evidence that C.B.'s parental rights should be terminated and the children freed for adoption.[7] According to court reports and case plans filed into the record, DCFS required C.B. to, among other things, secure and maintain adequate housing to meet the children's basic needs; contribute payments

---

[6] The provision provides in relevant part:

> (5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
> ***
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

[7] Under the manifest error standard of review, an appellate court may not reverse a factfinder's determinations unless it finds from the record that a reasonable factual basis does not exist for the findings and that the record establishes the findings are manifestly erroneous or clearly wrong. See Stobart v. State, Through Department of Transportation and Development, 617 So. 2d 880, 882 (La. 1993). Thus, under the standards which govern our review, if the trial court's findings are reasonable after reviewing the record, we cannot reverse those findings even if we may have decided differently had we been sitting as the trier of fact. Rosell v. ESCO, 549 So. 2d 840, 844 (La. 1989).

4

toward the cost of the children's care in the amount of $20.00 per month; obtain legal income and resources to meet the needs of the children; address her own mental health needs; and remain sober and free from illegal drug use. As evidenced at the termination hearing, however, C.B. failed to make sufficient parental contributions to the children during their time in care. C.B. also continued to struggle with illegal drug use, and issues remained regarding C.B.'s compliance with mental health treatment, substance abuse treatment, and more.

Although C.B. testified that she was seeking treatment to address her mental health issues, the DCFS worker testified that C.B. had not provided proof of treatment as of the time of trial.[8] Moreover, C.B. tested positive for methamphetamines on October 4, 2022 and January 10, 2023. C.B. again tested positive for methamphetamines and amphetamines on April 28, 2023. While C.B. entered and successfully completed an inpatient treatment program to address her substance abuse issues, being released from that program on June 8, 2023, C.B. soon after, again tested positive for both methamphetamines and amphetamines.[9] And C.B. admittedly stopped participating in the Family Preservation Court program, which addressed her substance abuse issues.[10]

Regarding C.B.'s ability to provide for the children, while the record demonstrates that C.B. was once employed full-time averaging a pay of $1,200.00 per month, as of July 2023, C.B. had failed to provide documentation to DCFS, as required, evidencing her proof of employment and financial income.[11] C.B.

---

[8] C.B. submitted to a psychological examination in October 2022 and was diagnosed with methamphetamine dependency disorder, borderline personality disorder, and persistent depressive disorder.

[9] During C.B.'s testimony, she stated that she had been sober since leaving inpatient treatment.

[10] C.B. was discharged from the Family Preservation Court program for noncompliance on June 28, 2023.

[11] According to the record, C.B. had been fired from one job for not showing up. However, C.B. testified that she was and had been employed, although she had not been able to provide DCFS with proof of employment.

provided DCFS with only two $20.00 money orders for the children throughout the pendency of her case. C.B. was at times inconsistent, and at times failed to attend her scheduled visitation with the children. Even more, C.B. agreed at the time of trial that she was not asking the court for immediate reunification with her children, but asking for more time "to work her case plan."

As it concerns Article 1015(5)(b), abandonment, the record establishes a six-month gap in C.B.'s parental contribution, from either January or February 2023 through September 2023, and notably, no documentation was presented to rebut the State's showing that C.B. failed to provide financial support for the children.[12] Further, as it concerns La. Ch. C. art. 1015(6) and C.B.'s failure to substantially comply with her case plan, the record demonstrates that C.B. continued to engage in illegal drug use, testing positive for dangerous substances. There was no showing of a period of sustained sobriety over the course of C.B's case. DCFS, thus, presented evidence of an established pattern of behavior posing a threat of serious harm to the children, and indicating that that there was no reasonable expectation of significant improvement in C.B.'s condition or conduct in the near future.[13]

Nevertheless, even upon finding the State has met its evidentiary burden, the court must determine whether termination is in the child's best interest. See La. Ch.C. art. 1037(B); see also State in the Interest of C.J.K., 00-2375, p. 8 (La. 11/28/00), 774 So. 2d 107, 113. Having reviewed the record herein, we cannot say the trial court was clearly wrong in its determination that the termination of C.B.'s

---

[12] Although C.B. testified that she brought gifts and clothes for the children to the visitation meetings, which is somewhat disputed by DCFS, these small offerings do not constitute significant contributions to the children's care and support. See State ex rel. T.P.M., 06-530, pp. 4-5 (La. App. 5th Cir. 11/28/06), 947 So. 2d 751, 753-754 (rejecting the natural parents' arguments that bringing toys, snacks, gifts, and other items to their visits with the children constituted significant contributions).

[13] As it concerns La. Ch.C. art. 1015(6), the children were in custody for less than one year when the petition to terminate C.B.'s parental rights was filed. However, as expressed herein, to terminate parental rights, the court must only *find that one* of the grounds set out in Article 1015 is proven. See La. Ch.C. art. 1037(B)(1).

parental rights is in the best interest of the children. At the time of trial, the children were ages one and two after coming into care at birth and a year old, respectively.[14] C.B., by her own admission, was not ready to provide for the children. Both children had lived with the same foster parents during the duration of their time in care.[15] The children were thriving in a safe and stable environment, and the foster parents were willing to adopt.

## CONCLUSION

For the above and foregoing reasons, the October 26, 2023 judgment of the trial court is affirmed. All costs of this appeal are assessed to C.B.

**AFFIRMED.**

---

[14] At the time of trial, a year had elapsed since the children's removal.

[15] The children had been with the same foster parents since November 2022.