# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-810


**IN THE INTEREST OF TMS**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20040847
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


**MARC T. AMY**
**JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir and Marc T. Amy, Judges.


**AFFIRMED.**

**Lloyd Dangerfield**
**703 E. University Avenue**
**Lafayette, LA   70503**
**(337) 232-7041**
**COUNSEL FOR APPELLEE:**
     **D.S.**


**L. Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine I, Room 218**
**Lafayette, LA   70508**
**(337) 262-1555**
**COUNSEL FOR APPELLEE:**
     **Department of Social Services**


**Vivian V. Neumann**
**730 Jefferson Street**
**Lafayette, LA   70501**
**(337) 261-0079**
**COUNSEL FOR APPELLEE:**
     **T.M.S.**

**Allyson M. Prejean**
**Post Office Box 3862**
**Lafayette, LA   70502**
**(337) 288-4028**
**COUNSEL FOR APPELLANT:**
    **E.S.**

**Michelle Breaux**
**Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, LA   70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

AMY, Judge.

E.S.[1], the mother of the child, T.M.S., appeals from a judgment terminating her parental rights. We affirm the judgment, finding no error in the trial court's determination that the State met the burden of proof required to terminate parental rights.

### Factual and Procedural Background

E.S. is the biological mother of the minor, T.M.S. On September 28, 2004, the court granted an Instanter Order on the grounds of E.S.'s neglect and inability to care for and provide for her son, T.M.S. He was placed in the temporary custody of the Louisiana Department of Social Services, Office of Community Services ("OCS"). On November 30, 2004, the court adjudicated the child in need of care. Subsequent hearings resulted in continued State custody and renewed approval of the proposed case plan. E.S.'s case plan included the following provisions: "mental health treatment, parenting skills, permanency planning, cooperation with the agency, housing, income, and visit[ation] with her child according to the visitation contract." Additionally, the trial court, enforcing the case plan, ordered E.S. to pay fifty dollars each month to support T.M.S.

On November 12, 2007, the State filed a Petition for Termination of Parental Rights and Certification for Adoption. Trial on the matter was held on April 16, 2008. In its reasons for ruling, the trial court noted that the whereabouts of T.M.S.'s father, D.S., are "basically unknown." Accordingly, the trial court's reasons for ruling referred exclusively to the case plan concerning the mother, E.S.

Consequently, the trial court, in its reasons for ruling, focused on the circumstances concerning E.S. In particular, the trial court noted that it found that

---

[1] Pursuant to Uniform Rules–Courts of Appeal, Rules 5-1 and 5-2, the initials of the minor child and the appellant have been used.

returning custody of T.M.S. to E.S. would pose a high risk of harm. The trial court referenced an episode in which E.S. attempted to elope with the child while he was in the custody of OCS. The Physician Emergency Certificate resulting from the event reflects that E.S. was arrested, struggled with police and was "tazered." The Certificate indicates that, thereafter, "she cut her wrist in the patrol car [with a] razor she had hidden." The trial court further referenced E.S.'s "numerous suicide attempts" and her failure to obtain mental health treatment as required by the case plan. The trial court found, among other things, that the State demonstrated E.S.'s failure to complete required parenting classes and her failure to support the minor child. Finally, the trial court observed that T.M.S. had bonded with the foster parents caring for him.

The trial judge's finding resulted in the termination of both E.S.'s and D.S.'s parental rights to T.M.S. E.S. appeals, asserting the following assignments of error:

1. The trial court erred in applying an incorrect standard in terminating E.S.'s parental rights to TMS.

2. OCS did not prove by clear and convincing evidence that E.S. failed to provide significant contributions to the child's care and support for any period of six consecutive months.

3. OCS did not prove by clear and convincing evidence that E.S. failed to substantially comply with her case plan.

4. OCS did not prove by clear and convincing evidence that there was no reasonable expectation for improvement in E.S.'s condition and/or conduct.

5. The trial court erred in finding that termination of E.S.'s parental rights was in the best interest of T.M.S.

2

**Discussion**

*Burden of Proof*

E.S. alleges that the trial court erred by applying the wrong standard in terminating her parental rights. In support of this argument, she points to the trial court's use of the words "*fully comply*" in its reasons for ruling, rather than "*no substantial parental compliance*" as set out in La.Ch.Code art. 1015(5).

Louisiana Children's Code Article 1015 sets forth, in pertinent part, the grounds for terminating parental rights:

> (4)     Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> . . . .
>
> (b)     As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> . . . .
>
> (5)     Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

The State must prove "each element of a ground for termination of parental rights by clear and convincing evidence." La.Ch.Code art. 1035.

The supreme court has explained:

> [T]hat great care and caution must be exercised in these proceedings because the permanent termination of the legal relationship existing between children and their biological parents is one of the most severe

and drastic actions the State can take against its citizens. *State in the Interest of G.J.L. and M.L.*, 791 So.2d at 85; *State in the Interest of J.A.*, 752 So.2d at 811. Parents have a natural, fundamental liberty interest in the continuing companionship, care, custody and management of their children, which warrants great deference and vigilant protection under the law. *Id*. Thus, we recognize that the potential loss to parents is grievous, "perhaps more so than the loss of personal freedom caused by incarceration." *Id*. Because due process requires that a fundamentally fair procedure be followed when the State seeks to terminate the parent-child legal relationship, actions to terminate must be scrutinized very carefully. *Id.*

*State in the Interest of J.M., J.P.M., and M.M.*, 02-2089, pp. 8-9 (La. 1/28/03), 837 So.2d 1247, 1252-53 .

In its reasons for judgment, the trial court explained:

The court has decided to terminate parental rights based upon failure of the mother to fully comply with the case plan developed by OCS. The court finds that a high risk of harm continues to exist should T.M.S. be placed in his mother's custody, characterized in part by her eloping with the child, during a visitation with the child at OCS while in possession of a razor in her pocket; based upon numerous suicide attempts on the part of the mother at various times; based upon the findings of Dr. Bergeron, finding that she is suffering from mental illness; based upon the fact that she has failed to comply with the case plan by obtaining the mental health treatment mandated by the case plan, rather than completing it, making a self-diagnosis that she no longer needed the mental health treatment and, basically, not doing it. Second, by her failure to attend Extra Mile as ordered to do so; by failure to maintain gainful employment for the support of her child; by failure to provide support for the child.

The review of a trial court's involuntary termination of parental rights findings is governed by the manifest error standard on appeal. *State in the Interest of K.G. & T.G.*, 02-2886 (La. 3/18/03), 841 So.2d 759. Our review of the record reveals no indication that the trial court applied an incorrect burden of proof, despite its use of the phrase "fully comply" rather than "substantially comply." It is important to note that a "district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment."

*Bellard v. American Cent. Ins. Co.*, 07-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671 (citations omitted). In this instance, and as will be discussed below, the record supports determinations both that E.S. failed to substantially comply with the case plan and the additional ground for termination under La.Ch.Code art. 1015(4)(b).

Neither do we find merit in E.S.'s assertion that the trial court did not provide written findings in violation of La.Ch.Code art. 1037(b), which provides:

> When the court finds that the alleged grounds set out in any Paragraph of Article 1015 are proven by the evidentiary standards required by Article 1035 and that it is in the best interests of the child, it shall order the termination of the parental rights of the parent against whom the allegations are proven. The court shall enter written findings on both issues. The consideration of best interests of the child shall include consideration of the child's attachment to his current caretakers.

Here, the trial court's reasons for ruling were transcribed and placed into the record following the entry of judgment. While the precise terms of "clear and convincing evidence" and "best interest of the child" were not included, the reasons reference findings related to both areas. Further, the judgment reflects the trial court's determination that OCS "met its burden of proof and that termination of parental rights is in the best interest of the minor child, for written reasons to be assigned."

*Significant Contributions to the Child's Care*

E.S. also contends that the State did not prove by clear and convincing evidence that she failed to provide significant contributions to the child's care and support for six consecutive months, as is required by La.Ch.Code art 1015(4)(b). By her own admission, E.S. states that she contributed only four fifty-dollar child support payments, but contends that taking clothing, gifts, and supplies to her son during visits constitutes significant contributions to the child's care and support.

The trial court, in its reasons for judgment, elaborated:

> Even though she testified that at times she gave some clothing and gifts to the child, while commendable does not replace the need to provide support for that child.

Based on the record, we find no manifest error in the trial court's determination that sporadic gift-giving does not amount to significant support. *See State in the Interest of M.L., C.L. and D.L.*, 00-153 (La.App. 3 Cir. 5/3/00), 761 So.2d 103 (wherein a panel of this court held that a mother's one-time monthly contribution to her children's support and her act of taking birthday cakes to their parties did not constitute significant contributions to their support and care.) *See also, State ex rel. T.P.M.*, 06-530, p. 6 (La.App. 5 Cir. 11/28/06), 947 So.2d 751, 754 (wherein the fifth circuit stated that it could not "reasonably conclude that occasional snacks or gifts constitute 'significant contributions' to [the children's] care and support."); *State in the Interest of DMH v. DMH*, 27,807, p. 13 (La.App. 2 Cir. 9/27/95), 661 So. 2d 643,650 (in which the second circuit found that a parent's "constructive gestures" of taking toys, one article of clothing, and an occasional "fast food lunch" to her children did "not suffice as 'reasonably necessary food [and] clothing.'")

Accordingly, this assignment is without merit.

*Substantial Compliance*

As her third assignment of error, E.S. alleges that the State did not prove by clear and convincing evidence that she failed to substantially comply with her case plan. Louisiana Children's Code Article 1036(C) sets forth the evidence that may be used to prove parental noncompliance with the case plan. It reads in pertinent part:

> C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
>
> . . . .

6

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

Louisiana Children's Code Article 1036(C) indicates that noncompliance may be proven by showing "one or more" of the enumerated grounds. As discussed in the previous assignment of error, the record supports the determination that E.S. failed to contribute to the costs of the child's foster care when it had been ordered that she pay fifty dollars per month. Thus, the State met its burden of proving that E.S. failed to substantially comply with her case plan per La.Ch.Code art. 1036(C)(4).

Additionally, La.Ch.Code art.1036(C)(5) addresses a parent's failure to comply with a required treatment program. E.S.'s case plan included compliance with the recommendations of Dr. Ed Bergeron, a psychologist. E.S. was referred to Dr. Bergeron by OCS based on her mental health history.

She met with Dr. Bergeron in 2006. Qualified as an expert in the field of clinical psychology, Dr. Bergeron testified that he believed that E.S. suffers from either bipolar disorder or borderline personality disorder. Due to E.S.'s young age, Dr. Bergeron could not make an exact diagnosis. His recommendations for E.S. included continued treatment and mental health services. She visited Crowley Mental Health in September 2007, complaining of inadequate sleeping habits, anger tendencies, depression, hallucinations, and paranoia. She reported that she tried to stab her husband because she was angry. In January 2008, E.S. contacted Crowley Mental

7

Health, asserting that she was calling only because OCS was making her. According to Crowley Mental Health Center's progress notes dated January 16, 2008, E.S. was turned away because the clinic could not force acceptance of services. The case managers testified that E.S. was not regularly taking medication, nor was she receiving mental health services. Accordingly, the record supports the finding that E.S. did not comply with the portion of the case plan concerning a required treatment program.

Additionally, La.Ch.Code art. 1036(C)(6) and (7) address the failure of the parent to correct or improve the conditions that led to removal and the problems that prevent reunification. A report from OCS to the court dated March 14, 2005 indicates that E.S. made a statement to the Department of Social Services that "she was unable to adequately care for her minor child" due to her "suspected mental illness," "lack of resources," and inability to provide sufficient food, housing, supervision, and guidance. This statement served as the initial reason her son was placed in the State's custody. The record reveals no change in these circumstances. Particularly, E.S. has not obtained gainful employment and she only attended one three-hour parenting class when a program consisting of several classes was assigned as part of her case plan.

Accordingly, a number of grounds for failure to substantially comply with the case plan were established pursuant to La.Ch.Code art. 1036(C). Again, the State is required to prove the existence of only one ground in order to prove lack of parental compliance with a case plan. Thus, the trial court was not manifestly erroneous in finding that the State proved by clear and convincing evidence that E.S. did not substantially comply with her case plan.

*Reasonable Expectation for Improvement*

In her fourth assignment of error, E.S. asserts that the State failed to prove by clear and convincing evidence that there was no reasonable expectation for improvement in her condition and/or conduct. Louisiana Children's Code Article 1036(D) provides a list of conditions that may be used to evidence the lack of any reasonable expectation of significant improvement in the parents' conduct in the near future as set forth in La.Ch.Code art. 1015(5). Louisiana Children's Code Article 1036(D) reads in pertinent part:

> (D) Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

> (1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

> . . . .

> (3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

Dr. Bergeron first saw E.S. on January 19, 2006. OCS referred her to the psychologist, in an effort to ascertain whether she had any mental or psychological issues that would interfere with her ability to parent. Dr. Bergeron testified as to E.S. having a history of being "extremely unstable." He recounted E.S.'s narrative regarding the eloping experience and prior suicide attempts, and he confirmed, via testing, her account of her history of depression, mood swings, and anger. Dr. Bergeron narrowed her diagnosis to two possible disorders: bipolar disorder and borderline personality disorder. His inability to differentiate was due to her young

age. At the time that Dr. Bergeron interviewed E.S., he did not recommend reunification. Rather, he recommended that she continue to receive treatment and that she not be reunited with T.M.S. until she established stability and obtained further services. When informed that E.S. had essentially not obtained consistent treatment since Dr. Bergeron's interview with her in 2006, Dr. Bergeron testified that if she has not received adequate assistance, then it was his opinion that "there would still be problems." He elaborated, explaining that untreated psychotic disorders "tend to be long-lasting" and do not go into "spontaneous remission" without mental health services. Therefore, obtaining treatment and/or medication is crucial. Dr. Bergeron testified that it is impossible to provide adequate care to a child if the parent is as emotionally unstable as E.S. was in 2006 and, due to her failure to seek treatment, still is.

E.S. testified that she could take care of T.M.S. if she regained custody of him and that there was nothing that precluded her from being a safe caretaker. However, it is well established that "where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review[.]" *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). "In its manifest error review, it is important that the appellate court not substitute its opinion when it is the juvenile court who is in the unique position to see and hear the witnesses as they testify." *In re A.J.F.*, 00-0948, p. 26 (La. 6/30/00), 764 So.2d 47, 62. Accordingly, after hearing the testimony presented, the trial court did not find that there was a reasonable expectation of improvement. We find no manifest error in this determination. The record supports the finding that the State proved by clear and

convincing evidence that there was no reasonable expectation for improvement in E.S.'s condition and/or conduct.

*Best Interest of the Child*

In her last assignment of error, E.S. contends that the trial court erred in finding that termination of her parental rights was in the best interest of T.M.S. The termination of parental rights requires both proof of at least one of the La.Ch.Code art. 1015 grounds and a finding that the termination is in the best interest of the child under La.Ch.Code art. 1039. *State in Interest of M.L.*, 95-45 (La. 9/5/95), 660 So.2d 830.

In its reasons for judgment, the trial court stated:

> Furthermore, this child has been in the custody of the State since September 28, 2004, a period of approximately three and a half (3 ½) years. The child has been in foster care, has presently bonded with the foster parents, who plan to adopt the child. The mother testified that at various times, during the period when her child was in foster care, that she has become overwhelmed, specifically during the time of her pregnancy, and behaved in manners not conducive to the health and safety of her minor child. Additionally, during the period when her child was in foster care, she missed two (2) Family Team Conferences and has – she has, and continues to, exhibit mental health problems, including hearing of voices and paranoia.

The record indicates that T.M.S. was placed in the custody of foster parents in October 2004. He has remained with the same foster parents for the past three and one half years. As he is only four years old, this time period represents the majority of his life. The record reveals that T.M.S. refers to his foster parents as "Mom" and "Dad." It has been established that he is bonded to his foster parents and is attached to them. Furthermore, the record, as discussed in the previous assignments of error, supports a determination that E.S. has been unable to provide a proper environment for T.M.S.

Accordingly, we find that the trial court did not commit manifest error in finding that termination of parental rights was in the best interest of T.M.S.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to the appellant.

**AFFIRMED.**