# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 11-189

**STATE OF LOUISIANA**

**IN THE INTEREST OF**

**C.L.H., T.L.E., & T.A.H.**

**\*\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE**
**FOURTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF CALCASIEU, NO. 23410**
**HONORABLE RONALD F. WARE, DISTRICT JUDGE**

**\*\*\*\*\*\*\*\*\*\***

**JAMES T. GENOVESE**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

**Nick Pizzolatto, Jr.**
**Louisiana Department of Children and Family Services**
**4250 5th Avenue**
**Lake Charles, Louisiana 70607**
**(337) 475-3037**
**COUNSEL FOR APPELLANT:**
        **Louisiana Department of**
        **Children and Family Services**

**Charlotte Ieyoub – Assistant District Attorney**
**1020 Ryan Street**
**Lake Charles, Louisiana 70601**
**COUNSEL FOR APPELLANT:**
        **State of Louisiana**

**Mike K. Stratton**
**14th Judicial District Public Defender's Office**
**901 Lakeshore Drive, Ste. 700**
**Lake Charles, Louisiana 70601**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **L.A.H.**


**Ronald A. Rossitto**
**Post Office Box 3206**
**Lake Charles, Louisiana 70602**
**COUNSEL FOR MINORS:**
     **C.L.H., T.L.E., and T.A.H.**


**Edward Kelly Bauman**
**1131 Hodges Street**
**Lake Charles, Louisiana 70601**
**COUNSEL FOR DEFENDANT:**
     **W.E.**


**Douglas K. Hall**
**901 Lakeshore Drive, Suite 700**
**Lake Charles, Louisiana 70629**
**COUNSEL FOR DEFENDANT:**
     **A.E., Jr.**

**GENOVESE, Judge.**

The State of Louisiana, through its Department of Social Services, Office of Community Services, renamed Department of Children and Family Services (State), appeals the judgment of the trial court dismissing its petition to terminate the biological mother's parental rights. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On July 15, 2010, the State filed a Petition for Certification for Adoption and Termination of Parental Rights of L.A.H.,[1] the biological mother of C.L.H. (date of birth April 21, 2003), T.L.E. (date of birth December 13, 2005), and T.A.H. (date of birth May 20, 2008). The State asserted that two of the children, C.L.H. and T.L.E., were taken into the State's custody on January 26, 2009, and that T.A.H. was taken into the State's custody on February 1, 2009, after L.A.H. was "arrested for various drug[-]related criminal charges when [her] house was raided by the Sulphur Police Department." According to the State's petition, the three children were returned to L.A.H. on a trial basis on October 5, 2009; however, on October 23, 2009, the temporary placement ceased, and the children were again placed into foster care. The State sought to have L.A.H.'s parental rights terminated pursuant La.Ch.Code art. 1015(4), La.Ch.Code art. 1015(5), and La.Ch.Code art. 1036.

In its petition, the State asserted that L.A.H. had not substantially complied with her case plan. Specifically, the State alleged that L.A.H.: (1) had "not obtained safe, stable housing[;]" (2) had "not provided any proof of legal income[;]" (3) had not satisfactorily completed outpatient treatment with the Office of Addictive Disorders; (4) had failed a random drug screen in December of 2009 and was arrested for possession and distribution of marijuana in February of 2010; (5) had attended the

---

[1]Pursuant to Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2, the initials of the parties are used to protect and maintain the privacy of the minors involved in this proceeding.

incorrect parenting course and had yet to attend the parenting course the State deemed acceptable; (6) had attended a course for domestic abuse victims but needed to attend another course since the State alleged that L.A.H. had "returned to being around drug users and dealers[;]" and (7) had "failed to make any monthly contributions toward the care of her children." The State did concede, however, that L.A.H. was in compliance with her case plan's requirement that she regularly visit her three children.

On October 21, 2010, a termination hearing was held. Following said hearing, the trial court dismissed the State's petition against L.A.H.,[2] finding that she had substantially complied with her case plan. The State appeals.

## ASSIGNMENTS OF ERROR

On appeal, the State asserts:

The trial court committed manifest error by finding that the mother was in substantial compliance with her case plan, that there was reasonable expectation of significant improvement in the mother's condition, by failing to find that the State had proven that the mother's parental rights should be terminated based upon Children's Code Article 1015(4) and (5) and Article 1036, and failing to find that it was in the best interest of the children that the mother's parental rights be terminated.

Additionally, the trial court committed manifest error by applying the incorrect burden of proof and requiring the mother be convicted of criminal charges before he would hold the two (2) drug busts against her.

## LAW AND DISCUSSION

Louisiana Children's Code Article 1035 requires that the State establish "each element of a ground for termination of parental rights by clear and convincing evidence." This court, in *State in the Interest of M.R. v. S.F.H.*, 09-889, pp. 2-3

---

[2]Though the parental rights of W.E., the biological father of C.L.H. and T.L.E., and A.E., Jr., the biological father of T.A.H., were terminated, W.E. and A.E., Jr., have not appealed the judgment, and their respective rights are not at issue herein.

2

(La.App. 3 Cir. 12/9/09), 25 So.3d 1021, 1022-23, *writ denied*, 09-2812 (La. 1/14/10), 24 So.3d 878, set forth both the burden of proof which the State must meet and the standard of appellate review in parental termination matters as follows:

> The termination of parental rights is a two-pronged inquiry. First, the State must prove by clear and convincing evidence the existence of, at least, one ground for termination under La.Ch.Code art. 1015. La.Ch.Code art. 1035(A); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Only after the ground for termination is found, the trial court must determine whether the termination is within the best interest of the child. La.Ch.Code art. 1039. On review of a termination of parental rights, an appellate court cannot set aside a trial court's finding of fact in the absence of manifest error or unless the findings are clearly wrong. *State in the Interest of K.G. & T.G.*, 02-2886, 02-2892 (La.3/18/03), 841 So.2d 759.

Thus, the State must first establish by clear and convincing evidence one of the statutory grounds for involuntary termination of a parent's rights, and then the State must establish by clear and convincing evidence that termination of parental rights is in the child's best interest. *Id.*

In the present case, the State's Petition for Certification for Adoption and Termination of Parental Rights alleged that termination of L.A.H.'s parental rights was appropriate pursuant to La.Ch.Code art. 1015(4), La.Ch.Code art. 1015(5), and La.Ch.Code art. 1036.[3] The relevant subsections of La.Ch.Code art. 1015 include the

---

[3]Louisiana Children's Code Article 1036 governs proof of parental misconduct and states that a lack of parental compliance with the family case plan and the lack of any reasonable expectation of significant improvement in the near future may be evidenced in the following manner:

> A. The admissibility of the conviction of a parent is governed by the Code of Evidence.
>
> B. A prior conviction may be proved by certified copy of the judgment of conviction or certified copy of the minute entry of conviction.
>
> C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
>
> (1) The parent's failure to attend court-approved scheduled visitations with the child.

3

following grounds for termination:

(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

. . . .

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

. . . .

(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with

---

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

4

a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

The trial court found that the State had not established by clear and convincing evidence the grounds for terminating L.A.H.'s parental rights. We hold that the trial court did not clearly err in finding that the State failed to prove either ground by clear and convincing evidence.

At the October 21, 2010 trial, the State first called L.A.H. to testify. When questioned about whether she had complied with her case plan's requirement that she obtain employment, L.A.H. testified that to comply with her case plan, she worked at her brother-in-law's construction company until October of 2009. According to L.A.H., she stopped working during the time that her children were returned to her because she did not have a babysitter. After her children were again placed into foster care, L.A.H. went back to work for her brother-in-law's construction company until February of 2010. She claims that her employment there ended when her sister and brother-in-law separated. Thereafter, L.A.H. worked as a convenience store clerk, then as a dancer at a gentleman's club in Leesville. On the date of trial, she was employed as a waitress at a gentleman's club in Lake Charles. According to L.A.H., she provided the required documentation of her employment in the form of letters from her employers or copies of her check stubs to each of her foster care managers.

When questioned about her living situation, L.A.H. testified that after her children were taken into the State's custody, she briefly went to live with her sister. She then moved next door to her sister for a short time. In November of 2009, L.A.H.

5

moved to another residence in Sulphur. In March of 2010, L.A.H. moved to Leesville. In May of 2010, she moved back to Lake Charles and lived at this residence until September of 2010 when she moved in with her cousin in Sulphur. On the date of trial, L.A.H. was still living with her cousin, but only until the home next door was ready for her to move into. L.A.H. testified that the water and electricity were scheduled to be connected the next day.

When questioned about whether she had complied with her case plan's requirement that she pay $100.00 per month for her contribution towards the children's care, L.A.H. did not deny that she had failed to comply every month. Although she could not recall exactly how many times she had made payments, L.A.H. testified that she also bought items for the children to give to them during their visits. According to L.A.H., she attended all but one of her scheduled visits with her children. Finally, L.A.H. denied having contact with D.C.[4] after it became a requirement that she not have contact with him.

When questioned about her required attendance of a parenting course, L.A.H. testified that she had attended a parenting course entitled "Common Sense Parenting." When the State questioned L.A.H. as to why she had not attended the parenting course entitled "Nurturing Parenting" which was the course specified by the State in her case plan, L.A.H. responded that she believed the course she attended was in compliance with her case plan, and she was never told differently.[5]

Only one witness was called by the State to counter the testimony of L.A.H.

---

[4]D.C. was L.A.H.'s boyfriend when the drug raid which precipitated the three children's placement into the State's custody occurred. Pursuant to L.A.H.'s pre-trial diversion plan for the charges stemming from this drug raid, L.A.H. was not to have contact with D.C.

[5]In addition, and even though it was not a part of her case plan, L.A.H. testified that she attended mental health counseling.

Jamie Comeaux, the foster care manager, testified that she was assigned to this case in February of 2010. Ms. Comeaux was the third foster care manager to handle this case since C.L.H., T.L.E., and T.A.H. entered the State's custody. Ms. Comeaux testified that L.A.H. was not in compliance with her case plan because she did not pay $100.00 per month for her contribution towards the children's care, she had not satisfactorily completed a substance abuse program, she had not attended the required parenting class,[6] and she had not refrained from having contact with D.C.

In its oral reasons for judgment, the trial court found that although it was shown that L.A.H. did not pay $100.00 per month, "she did provide some other material needs for the [children,]" such as purchasing shoes, clothing, and school supplies. On the issue of L.A.H.'s alleged failure to obtain suitable and stable housing, the trial court questioned Ms. Comeaux as to whether L.A.H. was ever offered assistance in obtaining suitable housing. Ms. Comeaux's response was simply that L.A.H. had never told her she needed assistance in that regard.

It is evident from our thorough review of the record that the trial court did not find the testimony elicited from Ms. Comeaux to be "clear and convincing." While the testimony at trial established that L.A.H. has not yet reached her goal of completing the requirements of her case plan, the testimony at trial did not establish that L.A.H. had failed to substantially comply with the requirements of her case plan.

Finally, the State asserts that "the trial court committed manifest error by applying the incorrect burden of proof and requiring [L.A.H.] be convicted of criminal charges before [it] would hold the two (2) drug busts against her." Essentially, the State would have the trial court treat an arrest as though it were the

---

[6]Ms. Comeaux testified that L.A.H.'s case plan required that she attend "Nurturing Parenting," not "Common Sense Parenting."

same as a conviction—this is simply not the case. The trial court was cognizant of the fact that L.A.H. was arrested twice following two separate drug raids. The first arrest was the drug raid which precipitated the three children's placement into the State's custody; however, the charges in that instance against L.A.H. were dismissed. The second occurred in February of 2010, and the charges against L.A.H. were pending as of the date of trial of this matter. In its oral reasons for judgment, the trial court declared, "She has not been convicted of any criminal conduct." We agree. The conviction of a parent may be introduced to prove parental misconduct pursuant to La.Ch.Code art. 1036; however, the record before us does not contain evidence that L.A.H. was convicted of any criminal charges. This argument is without merit.

Based on the record before us, we conclude the trial court did not manifestly err in finding that the State failed to meet its heavy burden of presenting clear and convincing proof of one of the statutory grounds for the involuntary termination of L.A.H.'s parental rights and that termination of L.A.H.'s parental rights is in the best interest of C.L.H., T.L.E., and T.A.H.

## DECREE

For the foregoing reasons, we affirm the judgment of the trial court dismissing the State's Petition for Certification for Adoption and Termination of Parental Rights of L.A.H.

**AFFIRMED.**