# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 12-196 consolidated with 12-197

**STATE IN THE INTEREST OF R.E. & R.C.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. J-1916-2010 DIV. B
HONORABLE JOHN C. FORD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir and
Marc T. Amy, Judges.

**AFFIRMED.**

**Robert J. Elliott**
**State of Louisiana,**
**Department of Children and Family Services**
**Post Office Box 832**
**Alexandria, LA   71309-0832**
**(318) 487-5218**
**COUNSEL FOR APPELLEE:**
        State of Louisiana, Department of Children and Family Services

**Guy R. Smith**
**Post Office Box 1769**
**Leesville, LA   71496**
**(337) 238-3558**
**COUNSEL FOR APPELLEE:**
        L. E. (Father)

**Lisa K. Nelson**
**Williams & Nelson**
**Post Office Drawer 1810**
**Leesville, LA   71496-1810**
**(337) 238-4704**
**COUNSEL FOR APPELLANT:**
        M. E. (Mother)

**Ronald K. Seastrunk**
**Post Office Box 1188**
**Leesville, LA   71496**
**(337) 239-2008**
**COUNSEL FOR APPELLEE:**
**State of Louisiana, Office of District Attorney**

**Bradley O'Neal Hicks**
**Dowden & Hicks**
**116 East Lula Street**
**Leesville, LA   71446**
**(337) 238-2800**
**COUNSEL FOR APPELLEE:**
**Unknown Father**

**Heather Cooley**
**Acadiana Legal Services**
**Post Office Box 832**
**Alexandria, LA   71309-0832**
**(318) 487-5218**
**COUNSEL FOR APPELLEES:**
**R. E. (child)**
**R. C. (child)**

**AMY, Judge.**

The State took the two subject children into custody due to allegations of neglect, inadequate housing, and drug use. After the mother gave birth to a third child, the State took that child into custody as well in light of the mother's continued substance abuse. Custody of the mother's eldest child was later transferred to the child's father and the State pursued termination of the mother's parental rights to the youngest two children given ongoing concerns regarding the mother's alleged substance abuse. The trial court granted the termination of parental rights and certified the children as eligible for adoption. The mother appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The record(s) in the appeals[1] of this termination of parental rights matter indicate(s) that the State of Louisiana, through the Department of Children and Family Services (DCFS), has responded to various reports regarding M.E.'s[2] care of her children since 2007. The instant matter was instituted in August 2010 when the State investigated a report that M.E. was "high on somas" and the children were in the home with her." The investigating State employee stated in the affidavit in support of the requested instanter order that she found the home to be "dirty with trash, food, and clothing." M.E. reported to her that "she took two trazadones that day" and had "smoked marijuana on three occasions while being pregnant." The affidavit also provides that M.E. "told another worker that she had taken two somas that day and two valiums the day before." M.E. was unable to

---

[1] We discuss both consolidated matters herein, but set forth separate decretal language given the separate case captions for each of the children at issue. *See State in the Interest of R.C.*, 12-197 (La.App. 3 Cir. _/_/12), _ So.3d _.

[2] The initials of the children and the parent(s) are used herein pursuant to Uniform Rules--Courts of Appeal, Rule 5-2. *See also* Uniform Rules--Courts of Appeal, Rule 5-1.

produce prescription bottles for the substances at that time. The employee explained that M.E. "was barely able to stand alone without falling[,]" that she had been "diagnosed bipolar and she [was] not taking her medication[,]" and that she "threatened suicide more than once throughout the interview[.]" The trial court ordered that M.E.'s two minor children, R.E. (born 6/21/02) and R.C. (born 4/12/09), be placed in the temporary custody of the State, through the DCFS.

The following month, the State filed a petition seeking a hearing to determine whether or not the two children should be adjudicated as children in need of care. The trial court continued the State's custody during that time and, in November 2010, adjudged the children to be in need of care.

During that same period, on November 1, 2010, M.E. gave birth to R.C. (II).[3] On December 20, 2010, the State received a report that M.E. was "high on Marijuana" on Thanksgiving and took valium for which she did not have a prescription. The affidavit in support of the resulting instanter order reported that, upon investigation, M.E. "tested positive for marijuana and benzodiazepines." The State's employee explained that M.E. admitted to the drug use due to depression. R.C. (II) was taken into custody and custody was thereafter continued. In January 2011, the State filed a petition to have R.C. (II) declared a child in need of care and continued in the custody of the State. The trial court rendered the judgment of adjudication in February 2011.

On August 30, 2011, the State filed a petition for termination of parental rights and certification of adoption for R.C. and R.C. (II).[4] The State alleged that

_____

[3] We reference the youngest child as R.C. (II) in light of the initial shared with the older sibling.

[4] The State sought and obtained a transfer of custody of R.E. to the child's biological father, L.E. R.E. is not the subject of the present proceeding. Further, L.E. voluntarily surrendered his rights to R.C. and R.C. (II), insofar as he was married to M.E. and, therefore, the

2

M.E. had not substantially complied with the case plan designed for reunification with the children, particularly in light of persistent substance abuse and failure to provide financial support for the children. Therefore, the State sought termination pursuant to La.Ch.Code art. 1015(4)(b) and/or (5). The State acknowledged that less than one year had passed since R.C. (II) had been placed in its custody and sought to proceed with the termination as the State had been working with M.E. for more than a year in the case involving R.C. The trial court subsequently entered an order granting the State "permission to proceed to termination, and [allowing it] to file this petition, even though one full year has not passed since the minor child, R.C. (II), was removed and placed in [the State's] custody."

After a hearing, the trial court recognized M.E.'s persistent substance use and determined that termination of parental rights was in the best interests of the two minor children. Accordingly, it terminated M.E.'s parental rights due to a failure to substantially complete her case plan and her failure to provide significant contributions to the care and support of the children. The trial court additionally certified the children as eligible for adoption.

M.E. appeals, assigning the following as error:

> The Trial Court committed manifest error by finding that the State had met its burden of proof, and that it was in the best interest of the minor children, R.C. and R.C. [II], for the parental rights of their biological mother, [M.E.] to be terminated.

**Discussion**

*Burden of Proof - Termination of Parental Rights*

A termination of parental rights proceeding involves a two-pronged inquiry. First, the State must present clear and convincing evidence of one ground of

---

legal father of the two youngest children. Additionally, State sought termination of the parental rights of "John Doe" as the biological father of R.C. and R.C. (II). The trial court ultimately terminated those rights as well. As the fathers' rights have not been appealed, we do not address them further.

termination pursuant to La.Ch.Code art. 1015. *See* La.Ch.Code art. 1035(A). *See also State ex rel. H.A.S.*, 10-1529 (La. 11/30/10), 52 So.3d 852. Additionally, the trial court must determine that the requested termination is in the best interest of the child(ren). *See* La.Ch.Code art. 1039. On appeal, a trial court's decision regarding whether parental rights should be terminated is reviewed pursuant to the manifest error standard. *State ex rel. H.A.S.*, 52 So.3d 852.

*Grounds for Termination – La.Ch.Code art. 1015*

In this case, the State asserted that termination of M.E.'s parental rights was appropriate pursuant to the grounds expressed in La.Ch.Code art. 1015(4)(b) and/or (5), which provide:

> The grounds for termination of parental rights are:
>
> (4)     Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
>         . . . .
>
> (b)     As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
>         . . . .
>
> (5)     Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

The trial court's judgment indicates that it found both of those grounds proven and, additionally, that it concluded that termination of parental rights was in the best interests of the children. We address these determinations in turn.

4

*La.Ch.Code art. 1015(4)(b) -- Care and Support*

M.E. first questions the State's contention that she demonstrated an intention to permanently avoid parental responsibility by failing to provide significant contributions to the children's care and support for a period of six consecutive months. M.E. acknowledges in her brief to this court that the case plan required that she provide "$10 per month for the care of the children while they were in foster care." She testified at trial, however, that she had been told by the State that she did not have to make these payments in light of her income being limited to Social Security disability payments.[5] Citing *State ex rel. C.L.H.*, 11-189 (La.App. 3 Cir. 6/1/11), 66 So.3d 647, *writ denied*, 11-1420 (La. 7/12/11), 67 So.3d 470, M.E. also suggests in her brief that evidence of certain in-kind support should be considered significant contribution to the children's care and support.

As a preliminary matter, we find no merit in M.E.'s contention that the trial court's failure to squarely address the ground involving financial contributions in its reasons for ruling indicates that the trial court found termination appropriate only under the alternative ground of failure to substantially comply with the case plan. Instead, the judgment of termination clearly reflects a finding that the State proved by clear and convincing evidence that both parents "have each failed to provide significant contributions, to the care and support of their minor child[ren.]" Having reviewed the record, we find no manifest error in that determination.

It is undisputed that the attendant case plan(s) included a financial support component. Namely, the case plan(s) provided that "[M.E.] will support her children in foster care and agree to pay $10 per month per child while unemployed and if employed will pay $25 per month per child in child support[.]" Further, the

---

[5] As testified to at trial, these payments were $674.00 per month.

record supports a decision that M.E. failed to provide this sum throughout the children's foster care, which well exceeded the time frame of six consecutive months as required by La.Ch.Code art. 1015(4)(b).[6]

Instead, the focus of M.E.'s assignment regarding this ground is that she was entitled to fairly rely on a State employee's statement that she did not have to make these payments in light of her meager income and, also, that she made significant in-kind contributions by supplying diapers and gifts. Catherine Weinnig, the case worker assigned to this matter, testified that when she took over the case file, she "read that they asked her to do $10 a month and [M.E.] said [a supervisor] had said not to[.]" However, Ms. Weinnig confirmed that the case plan consistently included the $10 financial support and that, notwithstanding previous advice to not pay the support in light of the meager finances, "she still needs to show that she needs to provide for the children's financial needs." In this regard, Ms. Weinnig told M.E. that: "[Y]ou have to show me that you can buy diapers and provide for the children's clothing. So, I asked her to provide some kind of funds for the caretaker."

Although M.E. suggests in her brief that her in-kind gifts constituted a significant contribution, the trial court was within its role as fact finder to accept Ms. Weinnig's testimony that: "[M.E.] hasn't been able to or given financial support for them. One time when we went up to the house she did give us a pack of diapers that she had there and she's given some clothes and shoes for birthday[s]

---

[6] The testimony at trial, including that of M.E., seemingly assumed a full failure to make financial contributions from the time R.C. was removed from the home. However, we note the "case plan reviews" provided that: "[M.E.] stated she has paid her support payments but the worker only saw proof of the initial two months[.]" Notwithstanding this reference to two initial payments, the period of nonpayment after the initial point of payment would have been greater than six months as the first case plan requiring financial support was approved by the trial court on September 28, 2010, and the petition for termination was filed on August 30, 2011. There is no indication that any payments were made toward the care and support of R.C. (II), who was taken into custody in December 2010.

6

and things like that." Ms. Weinnig further stated that, to her knowledge, M.E. had not provided any payment to the children's custodial caretakers and that to the extent items were provided to the children, they were "probably not" worth $10.

In light of the evidence demonstrating only sporadic and limited contributions, we do not find manifest error in the trial court's determination that M.E. failed to provide significant contributions to the children's care and support for any period of six consecutive months. While M.E. cites *State ex rel. C.L.H.*, 66 So.3d 647, for the proposition that in-kind gifts can be found to be significant contributions, the present case is distinguishable. Significantly, we point out that *C.L.H.* involved review of an underlying determination by the trial court that the State *failed* to meets its burden of proving a lack of financial contributions. *Id.* The appellate panel concluded that the trial court's decision was not manifestly erroneous in light of evidence that the mother in that case provided "shoes, clothing, and school supplies." *Id.* at 652. The present case, however, stems from a trial court's determination that the State did, in fact, sustain its burden of proving a lack of significant financial contribution. As explained above, the evidence of sporadic and limited gift giving supports the trial court's decision on this ground. *See In the Interest of TMS*, 08-810 (La.App. 3 Cir. 11/5/08), 999 So.2d 21.

This assignment lacks merit.

*La.Ch.Code art. 1015(5) – Substantial Parental Compliance*

Although the State need only prove one ground for termination in order to proceed to the second prong of the termination inquiry, M.E. also challenges the trial court's determinations that the State demonstrated her failure to substantially comply with the case plan prepared in her case and that there is no reasonable expectation of significant improvement in her conduct in the near future. M.E.

points to her attendance at parenting classes, as required by the case plan.[7] She also contends that the State has inadequately assisted her in obtaining the type of mental health treatment and counseling recommended for her. With that type of assistance, M.E. contends a reasonable expectation of improvement would be a reasonable possibility.

As provided for by La.Ch.Code art. 1036(C), a lack of parental compliance with a case plan may be evidenced by one or more of the following:

> (4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

> (5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

> (6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

> (7) The persistence of conditions that led to removal or similar potentially harmful conditions.

We have addressed La.Ch.Code art. 1036(C)(4) above, insofar as the trial court determined that M.E. failed to contribute to the costs of the children's foster care as ordered by the case plan. Additionally, and without question, the focus of the State and the trial court was M.E.'s inability to redress her continued substance abuse,[8] the most consistent problem preventing reunification. Given the affidavit

---

[7] Ms. Weinnig's testimony indicates that there may be some confusion as to a certificate received by M.E. with regard to the parenting classes. Ms. Weinnig opined that the certificate may have been for attendance rather than for completion of the course. Ms. Weinnig explained that it appeared that M.E. may have attended the courses, but did not graduate.

[8] In brief oral reasons for ruling, the trial court remarked that:

> Of course, in looking at [M.E]'s circumstances, the Court is convinced clearly that she's got problems with drugs that she's not going to be able to overcome anytime soon. I deal with drug - - with addicts in Drug Court all the time . . . . They're really difficult clients to get through Drug Court and as rigorous a program as that is, it's difficult for them. [M.E.], that's the only problem that this Court has had with you and I told you in the beginning all you had to do was stay clean. And, I now you have - - she

8

in support of the instanter order and Ms. Weinnig's testimony, it is clear that M.E.'s drug use was the chief condition leading to the children's removal.

Notably, M.E. testified at trial that she began using drugs at the age of nine and, although she was twenty-eight years of age at the time of trial, her longest period of sobriety had been one year. While the testimony indicated that M.E. periodically sought assistance with this problem, her success was not consistent. For instance, one stay at a rehabilitation facility was cut short when she left voluntarily due to her grandmother having a stroke and another period of treatment was terminated when she left to have a tooth pulled and the care facility would not allow her to stay in light of a prescription for a pain medication. Also, her case file with an addictive disorders clinic was closed after she was released due to a positive drug test. Her one time substance abuse counselor testified that, during her time with that clinic, M.E. tested positive for benzodiazepines,[9] marijuana, and cocaine. The last positive test was in September 2011, the month before the termination hearing.

Further, the case plan also required M.E. to continue with medications necessary for her mental health and to "continue going to mental health in order to maintain her stability." The evidence in this area generally supported a finding that, to the extent it was available to her, M.E.'s adherence to available treatment was not maintained. She remarked that she did not receive treatment at the mental health unit in her area in light of a conflict with an employee. We point out that we include reference to confusing evidence regarding mental health treatment only for

---

has prescriptions for some of this medication, but the Marijuana and the Cocaine, that's not prescribed by anybody, any doctor I know of.

[9] [M.E.] explained that her general practitioner prescribed medication, at times, for anxiety. However, according to her substance abuse counselor, no prescription was contained in the agency's file in this regard.

the sake of completeness. Instead, the principle focus of the State and its evidence was the failure to maintain sobriety. Sufficient evidence of the failure to comply with that aspect of the case plan essentially renders the failure to comply with the mental health aspect of the case plan redundant.

Given this evidence, we find no manifest error in the trial court's determination that the State presented clear and convincing evidence that M.E. failed to substantially comply with her case plan.

We further find support for the trial court's determination in that the State demonstrated that there was a lack of reasonable expectation of significant improvement in the near future as is additionally required by La.Ch.Code art. 1015(5). Louisiana Children's Code Article 1036 provides that:

> D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:
>
> (1) Any physical or mental illness, mental deficiency, *substance abuse*, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion *or based upon an established pattern of behavior*.

(Emphasis added.) Certainly the State demonstrated an established pattern of substance abuse so as to find that there was a lack of any reasonable expectation of significant improvement in that conduct in the near future.

Finally, M.E. points out that one year had not elapsed between the time that R.C. (II) was removed from her custody and the time the petition for termination was filed. Noting that La.Ch.Code art. 1015(5) permits the trial court to allow the proceedings inside of that time period with special permission, M.E. suggests that the trial court's failure to "articulate for the record" its reasons for granting the permission in this case constitutes reversible error.

However, the petition for termination specifically detailed the course of events underlying the change of custody of all three children and requested "that it be allowed to proceed to termination . . . with respect to [R.C. (II)], even though less than one year has passed since minor child, was removed and placed in the care, custody and control of petitioner." The State observed in the petition that, although less than one year had elapsed, the State had been working with M.E. for more than a year with respect to R.C. Thereafter, the trial court entered an order expressly granting the State "permission to proceed to termination, and [allowing it] to file this petition, even though one full year has not passed since the minor child, R.C. (II), was removed and placed in [the State's] custody." In light of this progression of the proceedings and the trial court's obvious acceptance of the State's basis for proceeding as it was, we leave the trial court's judgment undisturbed.

We find that M.E.'s arguments regarding the grounds for termination are without merit.

*Best Interests*

Finally, M.E. contends that the trial court was manifestly erroneous in finding that the termination of parental rights was in the best interests of the children as is required by La.Ch.Code art. 1039. She notes that reunification is presumed to be in a child's best interests and that the foster parents in this case are not yet certified for adoption.

With regard to the best interests criteria, Ms. Weinnig explained to the trial court that the children have been in the care of relatives and that the children have bonded with the couple. She described the foster mother as very attentive. She also stated that, although the couple has not yet been certified for adoption insofar as they still have a few classes to attend, adoption is their goal. Given this

11

evidence of a prospective new home for the children and given M.E.'s history of difficulties, we find no manifest error in the trial court's determination that termination of parental rights was in the best interests of both R.C. and R.C. (II).

This argument lacks merit.

## DECREE

For the foregoing reasons, we affirm the trial court's judgment of termination of parental rights to the minor child, R.C. We further affirm the trial court's certification of R.C. as eligible for adoption. Costs of this proceeding are assigned to the appellant, M.E.

**AFFIRMED.**